THIRD DIVISION
July 19, 2006

No. 1-05-2115

| | |
|---|---|
| In re APPLICATION OF THE COUNTY COLLECTOR FOR JUDGMENT AND SALE AGAINST LANDS AND LOTS RETURNED DELINQUENT FOR NONPAYMENT OF ANNUAL GENERAL REAL ESTATE TAXES FOR 1996, and Subsequent Years<br><br>(Phoenix Bond and Indemnity Company,<br><br>Petitioner-Appellant,<br><br>v.<br><br>William Mattingly, Lawrence Sisk, Maria Pappas, Cook County Treasurer and *ex Officio* Cook County Collector, and David D. Orr, Cook County Clerk,<br><br>Respondents-Appellees). | Appeal from the Circuit Court of Cook County<br><br><br><br><br><br><br><br><br><br><br><br>Honorable Robert W. Bertucci, Judge Presiding. |

MODIFIED ON DENIAL OF REHEARING

JUSTICE KARNEZIS delivered the opinion of the court:

Petitioner, Phoenix Bond & Indemnity Company (Phoenix), appeals from an order of the circuit court denying its petition to reinstate a vacated tax deed pursuant to section 22-80 of the Property Tax Code (the Code) (35 ILCS 200/22-80 (West 2000)). We affirm.

BACKGROUND

On January 23, 1998, the Cook County treasurer and Cook County clerk offered

for sale a lien for delinquent 1996 taxes on the property identified as permanent index number 27-08-406-045-0000, commonly known as 14726 Hollow Tree Road, in Orland Park, Illinois. Phoenix purchased the lien on January 23, 1998, for a payment of $3,028.60, with the period of redemption to expire January 5, 2001.

On January 5, 2001, prior to the expiration of the redemption period, the owner of the property, William Mattingly, filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. As a result of his filing in bankruptcy, the redemption period was extended 60 days from January 5, 2001. 11 U.S.C. § 108(b) (2000). On March 6, 2001, Mattingly deposited the appropriate funds, $18,368.24, with the county clerk's office to redeem the taxes. That amount included the amount of the 1996 taxes sold, subsequent taxes for 1997 and 1998, and penalties.

After Mattingly filed his bankruptcy petition, and before the expiration of the extended redemption period, Phoenix made an application to the circuit court on January 17, 2001, for an order directing the issuance of a tax deed. A hearing was held on Phoenix's application on February 22, 2001. On February 27, 2001, the circuit court, unaware of the pending bankruptcy, ordered the county clerk to issue a tax deed for the property to Phoenix.

Mattingly properly redeemed the taxes during the extended redemption period on March 6, 2001. Thereafter, Phoenix learned of this redemption when the county clerk refused to issue the tax deed as directed by the court on February 27, 2001.

Thereafter, on May 18, 2001, Phoenix filed a petition to expunge the redemption

2

tendered by Mattingly and to compel the issuance of the tax deed.  Attached to Phoenix's petition was a search of the bankruptcy records of the Northern District of Illinois for the *Western Division* showing no record of Mattingly having filed a voluntary petition for bankruptcy.  Mattingly filed a response to Phoenix's petition on June 19, 2001, wherein he included an affidavit from his counsel attesting to Mattingly's pending bankruptcy in the *Eastern Division* of the Northern District of Illinois and his attempts to notify Phoenix of the bankruptcy proceedings.  The county clerk filed a response to Phoenix's motion to expunge Mattingly's redemption wherein it argued that the redemption was proper and timely and the issuance of the tax deed was void *ab initio* because Phoenix failed to obtain leave of the bankruptcy court prior to petitioning the circuit court for the issuance of a tax deed.    The court held a hearing on the motions on September 20, 2001.  At the hearing, the court stated that it would not have ordered the tax deed to issue to Phoenix had it been aware of the bankruptcy proceedings.  Consequently, it denied Phoenix's motion to set aside Mattingly's redemption and compel issuance of the tax deed.

Almost two years later, on June 24, 2003, Lawrence Sisk filed a motion to intervene claiming to have a mortgage interest in the property.  The circuit court granted Sisk's motion and on July 8, 2003, ordered its previous order of September 21, 2001, be amended *nunc pro tunc* to correctly reflect the court's intention to vacate the issuance of the tax deed to Phoenix on February 21, 2001.  The July 8, 2003, order indicated that the September 20, 2001, order

"is amended to provide that the tax deed order in favor of Phoenix Bond and

3

> Indemnity Company of February 27, 2001 is hereby vacated and in accord with Section 22-80 of the Property Tax Code (35 ILCS 200/22-80) Phoenix is to be paid the amount that is necessary to redeem from the tax sale plus subsequent taxes and costs in accord with said section."

The court further ordered that Phoenix's application for a tax deed be dismissed, finding no just reason to delay enforcement of the order or to prevent the filing of an appeal. Phoenix filed a motion to amend the court's July 8, 2003, order on August 5, 2003, but it appears from the record that the court never ruled on that motion.

In January 2004, Phoenix petitioned the court pursuant to section 22-80 of the Code (35 ILCS 200/22-80 (West 2000)), to reinstate the tax deed on the grounds that it had not been tendered or paid those funds required by section 22-80. At a hearing on the motion on March 30, 2004, the court stated again that it would never have entered the February 27, 2001, order issuing the tax deed to Phoenix had it known that Mattingly's bankruptcy case was pending. On April 30, 2004, the court entered an order denying Phoenix's motion and ordering the county clerk to pay the redemption funds deposited by Mattingly on March 6, 2001, to Phoenix. The court also ordered that Mattingly was to pay to Phoenix within 90 days: (1) taxes for the first installment of 2000 previously paid by Phoenix in the amount of $2,143.75 plus interest of 1% per month from January 20, 2001; (2) court reporter fees paid by Phoenix for the hearing on its application for a tax deed in the amount of $75; and (3) $10 paid by Phoenix to the county clerk for issuance of a tax deed, pursuant to section 22-80 of the Code. The court again indicated that this was a final order and no just reason existed for delay in

4

enforcement or in taking an appeal.

The county treasurer then filed a motion to modify the order of April 30, 2004, to include language requiring Phoenix to surrender the original certificate of purchase to the county clerk in exchange for the payment of redemption. Prior to the hearing on this motion, Phoenix filed an appeal with this court (No. 1-04-1502). At the time, Phoenix was apparently unaware of the motion filed by the county treasurer. After both parties had filed their respective briefs with this court, Phoenix filed a motion to dismiss the appeal, which was granted.

On May 27, 2005, the circuit court heard the Treasurer's motion and ordered that its previous order of April 30, 2004, be modified to include language requiring the surrender of the certificate of purchase in exchange for the payment of redemption funds. The court also ordered that the redemption funds be deposited with the Clerk of the Circuit Court pending the outcome of any appeal from the May 27, 2005, order. It is from this order that Phoenix now appeals.

ANALYSIS

Phoenix claims that the trial court erroneously denied its motion to reinstate the tax deed where Mattingly did not reimburse Phoenix in accordance with section 22-80 of the Property Tax Code (35 ILCS 200/22-80 (West 2000)).

Before we consider the merits of Phoenix's claim, we must determine whether an order of the circuit court compelling the county clerk to issue a tax deed is void when it is entered in violation of federal bankruptcy law.

1-05-2115

Mattingly filed a voluntary petition for bankruptcy on January 5, 2001. Section 362(a)(1) of the Bankruptcy Code states:

"a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities of-

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that

6

arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a corporate debtor's tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.  11 U.S.C.  § 362(a) (2000).

The stay issued pursuant to section 362(a) takes effect immediately upon the debtor filing his petition in bankruptcy, regardless of whether the other parties to the stay, including a state court,  are aware of the filing.  *Cohen v. Salata*, 303 Ill. App. 3d 1060, 1064, 709 N.E.2d 668, 671 (1999); 3 Collier on Bankruptcy § 362.00, at 362-115 (15th rev. ed. 1998).  The stay lasts (1) with respect to acts against the property of the estate, until the property is no longer part of the estate, or (2) with respect to any other act, until the earliest of (a) the case being closed, (b) the case being dismissed, or (c) a discharge being granted or denied, unless a party requests relief from the stay from the bankruptcy court.  11 U.S.C.  § 362(c) (2000).

There is no dispute that Phoenix's January 17, 2001, petition for a tax deed was filed during the pendency of the stay and that Phoenix did not seek relief from the stay in the bankruptcy court.  Although it is not clear from the record under which subsection

of section 362(a) Phoenix's petition for a tax deed would be stayed, we are certain that it would be stayed under subsection (a)(3), as acts "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[1] 11 U.S.C. § 362(a)(3) (2000). In *In re Application of the County Treasurer & Ex Officio County Collector of Cook County*, 308 Ill. App. 3d 33, 41-43, 719 N.E.2d 143, 150 (1999), the court found that an attempt to obtain a tax deed after the period of redemption expired, and the attempt to obtain the statutory penalty interest in addition to the back taxes owed pursuant to section 253(c)(2) of the Property Tax Code (35 ILCS 205/253(c)(2) (West 1992)), were considered acts to obtain control over property of the estate under section 362(a)(3).

This court has previously determined that the automatic stay imposed by section 362(a) (11 U.S.C. § 362(a) (2000)) divests a state court of jurisdiction to adjudicate claims against a debtor after the filing of a petition in bankruptcy. *Little Texas, Inc. v. Buchen*, 319 Ill. App. 3d 78, 81, 744 N.E.2d 348, 351 (2001); *In re Application of the County Treasurer & Ex Officio County Collector of Cook County*, 308 Ill. App. 3d at 41-43, 719 N.E.2d at 150; *Cohen*, 303 Ill. App. 3d 1064, 709 N.E.2d at 671. Therefore, because Phoenix failed to seek leave of the bankruptcy court for a tax deed during the stay, the circuit court's order issuing the tax deed was void *ab initio*. See *Little Texas,*

---

[1] "Property of the estate" under section 541 of the Bankruptcy Code is considered "all legal or equitable interests of the debtor in property as of the commencment of the case." 11 U.S.C. §541(a)(1) (1994).

*Inc.*, 319 Ill. App. 3d at 82, 744 N.E.2d at 81-82; *Cohen*, 303 Ill. App. 3d at 1065-66, 709 N.E.2d at 672.

The question remains: Is Phoenix now entitled to a tax deed because Mattingly failed to reimburse Phoenix within 90 days as required by section 22-80 of the Property Tax Code (35 ILCS 200/22-80(b) (West 2000)), when the initial tax deed order was void? The short answer is no.

The relevant portion of section 22-80 of the Code states:

"(b) Except in those cases described in subsection (a) of this Section, and unless the court on motion of the tax deed petitioner extends the redemption period to a date not later than 3 years from the date of sale, any order of court finding that an order directing the county clerk to issue a tax deed should be vacated shall direct the party who successfully contested the entry of the order to pay to the tax deed grantee or his or her successors and assigns (or, if a tax deed has not yet issued, the holder of the certificate) within 90 days after the date of the finding:

(1) the amount necessary to redeem the property from the sale as of the last day of the period of redemption ***; and

(2) amounts in satisfaction of municipal liens paid by the tax purchaser or his or her assignee, and the amounts specified in paragraphs (1) and (3) of subsection (a) of this Section, to the extent the amounts are not included in paragraph (1) of this subsection (b).

If the payment is not made within the 90-day period, the petition to vacate

the order directing the county clerk to issue a tax deed shall be denied with prejudice, and the order directing the county clerk to issue a tax deed shall remain in full force and effect. No final order vacating any order directing the county clerk to issue a tax deed shall be entered pursuant to this subsection (b) until the payment has been made." 35 ILCS 200/22-80(b) (West 2000).

The Cook County treasurer and Cook County clerk contend that the terms of section 22-80 of the Code do not create a right to a tax deed where a redemption was timely tendered and an order directing the issuance of a tax deed was void. The county treasurer and clerk argue that the language of section 22-80 addresses payments due to a tax purchaser where a *valid* tax deed is entered and later vacated and where there is no redemption tendered by the property owner. Phoenix claims that we should disregard this argument because it is unsupported by any citation of authority.

Whether section 22-80 of the Code is applicable to the facts of this case is one of first impression and the issue before us is one of statutory construction. The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Ward*, 215 Ill. 2d 317, 324, 830 N.E.2d 556 (2005). The best evidence of the legislature's intent is the language of the statute itself, and when possible, a court should interpret the language of the statute according to its plain and ordinary meaning. *In re D.F.*, 208 Ill. 2d 223, 229, 802 N.E.2d 800 (2003). In doing so, we do not construe words and phrases in isolation; rather, we look at the language of the statute as a whole. *In re Detention of Lieberman*, 201 Ill. 2d 300, 308, 776 N.E.2d 218 (2002). The intent of the legislature can be discerned by considering the entire Act, its nature,

10

its object and "the consequences that would result from construing it one way or the other." *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96, 566 N.E.2d 1283 (1990). If the language of a statute produces absurd or unjust results not contemplated by the legislature, we are not bound by the literal language of the statute. *D.F.*, 208 Ill. 2d at 230, 802 N.E.2d at 800. We review issues of statutory construction *de novo*. *Ward*, 215 Ill. 2d at 324, 830 N.E.2d 556.

Looking at the language of the statute as a whole, we agree with the county treasurer and clerk that section 22-80 (b) applies to payments due to a tax purchaser where a *valid* tax deed is initially entered. Section 22-80 (b) states that if an order issuing a tax deed is vacated "the party who successfully contested the entry of the order" shall make payments as directed by the statute within 90 days. 35 ILCS 200/22-80(b) (West 2000). Section 22-45 of the Code specifies the procedures and the grounds for contesting the issuance of a tax deed. According to section 22-45, a tax deed is incontestable except by appeal from the order of the court or by a petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2000)). 35 ILCS 200/22-45 (West 2000). Section 22-45 limits grounds for relief under section 2-1401 to: (1) proof that taxes were paid prior to sale; (2) proof that the property was tax exempt; (3) proof that the tax deed was procured by fraud or deception; and (4) proof of insufficient notice to the property owner. 35 ILCS 200/22-45 (West 2000). As the parties remarked in the record, this was not a situation in which a section 2-1401 petition would be appropriate.

In the case at bar, Mattingly did not contest the issuance of the tax deed. After

11

receiving the order of the court issuing the tax deed in the instant case, Phoenix presented it to the county clerk who marked the order void for redemption and returned it to Phoenix. Thereafter, on May 18, 2001, Phoenix filed a motion with the circuit court to set aside the redemption and compel the issuance of the tax deed. The court's initial order compelling the county clerk to issue the tax deed was *void ab intio* as it was entered in violation of the automatic stay in bankruptcy court. Reading sections 22-80 and 22-45 together, we find that with respect to these particular facts, Mattingly would not be considered a "party who successfully contested the entry of the [tax deed]." 35 ILCS 200/22-80(b) (West 2000). In this case, there was not a "party who successfully contested the entry of the order" but, rather, a void order that never should have been issued in the first instance.

Furthermore, section 22-80(b) requires that the "party who successfully contested the entry of the [tax deed]" to pay "the amount necessary to redeem the property from the sale as of the last day of the period of redemption." 35 ILCS 200/22-80(b) (West 2000). This language suggests that this subsection is applicable to instances where the tax deed was issued because the property owner did not redeem the taxes. Here, Mattingly properly deposited the redemption funds with the Cook County clerk on the last day of the redemption period as extended by section 108(b) of the Bankruptcy Code (11 U.S.C. 108(b) (2000)).

In addition, section 22-80(b) grants relief to the party who initially was granted the tax deed, or the holder of the certificate, if "the party who successfully contested the entry of the tax deed" does not make the necessary payments within the 90-day period.

12

"If the payment is not made within the 90-day period, the petition to vacate the order directing the county clerk to issue a tax deed shall be denied with prejudice, and the order directing the county clerk to issue a tax deed shall remain in full force and effect." 35 ILCS 200/22-80(b) (West 2000). This relief could never be granted in situations present here, where the tax deed was void *ab initio*. The failure to make payments as directed by the statute could never make a void order valid.

Similarly, not only was the court's order void, it was entered in violation of section 22-40 of the Code (35 ILCS 200/22-40 (West 2000)). Section 22-40 of the Code requires that for a tax deed to be granted, the redemption period must have expired without the taxes having been redeemed. Here, as previously stated, Mattingly properly deposited the redemption funds with the county clerk on the last day of the extended redemption period. In addition, section 22-40 of the Code requires that the tax deed petitioner comply "with all the provisions of law entitling him or her to a deed." 35 ILCS 200/22-40(a) (West 2000). In this case Phoenix failed to comply with section 362(a) of the Bankruptcy Code (11 U.S.C. 362(a) (2000)) by failing to request leave from the stay granted to Mattingly as a result of the bankruptcy proceedings. Reading all of the relevant subsections of the Code together, we find that the legislature did not intend section 22-80(b) to apply to instances where the tax deed was entered in violation of section 22-40 (35 ILCS 200/22-40 (West 2000)).

In sum, after reading section 22-80 and other relevant sections of the Code, we find that the legislature did not intend section 22-80 to apply to cases such as this one, where: (1) the order issuing the tax deed was void as it violated the automatic stay of

13

the bankruptcy court; (2) the property owner deposited redemption funds within the extended redemption period; and (3) the tax deed order was entered in violation of section 22-40 of the Code.   Accordingly, we affirm the order of the circuit court denying Phoenix's motion for reinstatement of the tax deed.

For the foregoing reasons, the judgment of the circuit court is affirmed but remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed and remanded.

HOFFMAN, P.J., and ERICKSON, J., concur.